# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

BRANCH BANKING AND TRUST COMPANY,

    Plaintiff(s),

v.

DESERT CANYON PHASE II LLC, et al.,

    Defendant(s).

2:12-CV-1463 JCM (PAL)

**ORDER**

Presently before the court is plaintiff Branch Banking & Trust Company's ("Branch Banking") motion for summary judgment. (Doc. # 30). Defendants Desert Canyon Phase II, LLC, Nigro Development, Inc., DC Management Group, LLC, Edward Nigro, Donna Nigro, Michael Nigro, Margaret Nigro, and Todd Nigro (collectively "defendants") have responded (doc. # 37) and plaintiff has replied (doc. # 41).

Also before the court is defendants' motion for partial summary judgment (doc. # 39). Plaintiff has responded (doc. # 46) and defendants have replied (doc. # 50).

**I.**   **Background**

Plaintiff Branch Banking is the successor in interest to non-party Colonial Bank by acquisition of assets from the FDIC as receiver for the bank.

Branch Banking's claims arise out of an April 23, 2008, promissory note secured by a deed

**James C. Mahan**
**U.S. District Judge**

1  of trust executed by defendant Desert Canyon Phase II, LLC ("Desert Canyon"). The note secured
2  a loan from Colonial Bank in the original principal amount of $9,364,000. The individual and
3  corporate defendants executed guaranties, promising to repay the present and future indebtedness
4  of Desert Canyon.

5  Colonial Bank was thereafter closed by the banking department of the state of Alabama, and
6  the FDIC was named as receiver to liquidate and distribute its assets.

7  On August 14, 2009, the FDIC assigned all of its rights, title, and interest in, to, and under
8  the loan documents to Branch Banking. Desert Canyon thereafter failed to pay the outstanding
9  principal balance plus accrued interest, which were due by April 23, 2010.

10  On August 12, 2011, Branch Banking served a demand letter upon Desert Canyon and the
11  individual guarantors. Desert Canyon and the guarantors failed to pay the balance due.

12  On February 29, 2012, a trustee's sale was held, and the property was sold to Branch Banking
13  for a credit bid in the amount of $2,784,000 in partial satisfaction of the note. According to Branch
14  Banking, the principal balance remaining under the note is $6,667,041.47, with accrued interest at
15  the time of filing in the amount of $619,479.27, for a total of $7,286,520.74.

16  The complaint asserts claims for breach of guaranty, breach of the covenant of good faith and
17  fair dealing, and seeks a deficiency judgment.

18  **II.  Legal Standard**

19  The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,
20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
21  show that "there is no genuine issue as to any material fact and that the movant is entitled to a
22  judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is
23  "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317,
24  323–24 (1986).

25  In determining summary judgment, a court applies a burden-shifting analysis. "When the
26  party moving for summary judgment would bear the burden of proof at trial, it must come forward
27  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue
2  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213
3  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

4  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the
5  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
6  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
7  make a showing sufficient to establish an element essential to that party's case on which that party
8  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party
9  fails to meet its initial burden, summary judgment must be denied and the court need not consider
10 the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

11 If the moving party satisfies its initial burden, the burden then shifts to the opposing party
12 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
13 *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
14 party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
15 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions
16 of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th
17 Cir. 1987).

18 In other words, the nonmoving party cannot avoid summary judgment by relying solely on
19 conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045
20 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
21 pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
22 for trial. *See Celotex Corp.*, 477 U.S. at 324.

23 At summary judgment, a court's function is not to weigh the evidence and determine the
24 truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,
25 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable
26 inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is
27 merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at
28

**James C. Mahan**
**U.S. District Judge**

- 3 -

249–50.

### III. Discussion

Following a trustee's sale, Nevada law entitles a creditor to a deficiency judgment "if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively." NRS 40.455(1). This statutory scheme also requires that the court, prior to awarding a deficiency judgment, hold a hearing regarding the fair market value of the property as of the date of the trustee's sale. NRS 40.457(1).

Following the hearing, the court must award a judgment for the lowest amount amongst the following calculations:

> (a) the amount by which the amount of indebtedness which was secured exceeds the fair market value of the property sold at the time of the sale, with interest from the date of the sale;
>
> (b) the amount which is the difference between the amount for which the property was actually sold and the amount of the indebtedness which was secured, with interest from the date of the sale; or
>
> (c) if the person seeking the judgment acquired the right to obtain the judgment from a person who previously held that right, the amount by which the amount of the consideration paid for that right exceeds the fair market value of the property sold at the time of sale or the amount for which the property was actually sold, whichever is greater, with interest from the date of sale and reasonable costs.

*See* NRS 40.459(1)(a)-(c).

*(A) Liability under the Guaranty Agreements*

As a preliminary matter, plaintiff asserts, and defendants do not refute, that the loan documents and guaranty agreements are valid and enforceable contracts, and that defendants failed to pay the agreed-upon amount. Similarly, defendants do not dispute plaintiff's standing as the legitimate successor-in-interest for the purposes of this loan.

Instead, defendants argue that plaintiff has not demonstrated that it suffered damages, and therefore has failed to establish an essential element of its claims. For the reasons discussed below, the court disagrees. It is clear plaintiff has been damaged by defendants' breach; the only matter

James C. Mahan
U.S. District Judge

- 4 -

1  remaining is a determination as to the amount.

2  As such, summary judgment as to liability is granted in favor of plaintiff, and defendants will
3  be liable for damages in an amount to be computed under NRS 40.459(1).

4  *(B)     Applicability of NRS 40.459(1)(c)*

5  Most of the arguments in the cross-motions for summary judgment focus on a provision of
6  Nevada law specifically limiting the recovery of parties who acquired the right to obtain a deficiency
7  judgment from a previous holder of the right.

8  Subsection (1)(c) provides that "[i]f the person seeking the judgment acquired the right to
9  obtain the judgment from a person who previously held that right, the amount by which the amount
10 of the consideration paid for that right exceeds the fair market value of the property sold at the time
11 of sale or the amount for which the property was actually sold, whichever is greater, with interest
12 from the date of sale and reasonable costs." NRS 40.459(1)(c).

13 Defendants argue that, because Branch Banking acquired the right to obtain the judgment
14 from the FDIC, NRS 40.459(1)(c) must apply. Thus according to defendants, Branch Banking must
15 supply sufficient evidence demonstrating the amount of consideration paid, which it has not done.
16 The court disagrees for the following reasons.

17 First, subsection (1)(c) on its face does not apply to loans obtained from the FDIC because
18 the FDIC does not qualify as a "person." The preliminary chapter of the Nevada Revised Statutes
19 defines certain terms used generally throughout the statutes. *See* NRS 0.010 ("This chapter provides
20 definitions and declarations of legislative intent which apply to Nevada Revised Statutes as a
21 whole."). In defining a "person," the chapter provides:

> Except as otherwise expressly provided in a particular statute or required by the context, "person" means a natural person, any form of business or social organization and any other <u>nongovernmental legal entity</u> including, but not limited to, a corporation, partnership, association, trust or unincorporated organization. <u>The term does not include a government, governmental agency or political subdivision of a government</u>.

NRS 0.039 (emphasis added).

Although governmental entities are explicitly excluded from the definition, defendants argue the context requires that the FDIC be considered a "person" because it was not acting in its governmental capacity, and that a distinction exists "between [the] FDIC's dual capacity as a federal insurer of deposits and as liquidating agent for the bank." (Doc. # 50, p. 6)(quoting *FDIC v. Glickman*, 450 F.2d 416, 418 (9th Cir 1971)).

Even accepting defendants' argument that the term is "required by the context" to apply to the FDIC, *see* NRS 0.039, the court finds that its application to the instant facts would be constitutionally impermissible.

In a recent decision in this district, Judge Robert Jones was confronted with a similar scenario whereby the plaintiff acquired a loan through an assignment prior to the statute's effective date of June 10, 2011. *See Eagle SPE NV I, Inc. v. Kiley Ranch Communities, et al*, 2014 WL 1199595 (D. Nev. Mar. 24, 2014). In addressing NRS 40.459(1)(c)'s retroactive application to pre-enactment assignments, Judge Jones concluded as follows:

> NRS section 40.459(1)(c) applies only where the assignment at issue occurred on or after the effective date of that statute. A contrary application would violate the Contract Clause. And the Court need not concoct any improbable interpretation of the statute to save it from constitutional infirmity. The Court's interpretation of the statute follows easily from the lack of any objectively retroactive language, the lack of any objective necessity for retroactive effect to carry out the statute's purposes, and the clearly expressed subjective intent of the Nevada Legislature.

*Id.* at 19.

Judge Jones' discussion of the issue was lengthy and his analysis thorough; in the interest brevity the court will not repeat what Judge Jones' exhaustive consideration of the issue here. Instead, the court will adopt those portions of *Eagle* regarding the retroactive application of 40.459(1)(c) to assignments occurring prior to the statute's effective date.

Those portions may be summarized as follows: The Nevada Supreme Court did not have occasion in *Sandpointe Apts., LLC, v. Eight Jud. Dist. Ct., et al*, 313 P.3d 849 (Nev. 2013) to address NRS 40.459(1)(c) in the precise context as is presented here, in particular, whether it applies retroactively to assignments made pre-enactment. Thus, the court can conclude, without offending

James C. Mahan
U.S. District Judge

- 6 -

1  *Sandpointe*, that subsection (1)(c) does not apply to this situation because, if it did, it would offend
2  the Contract Clause, and likely the Due Process Clause. *See Eagle SPE NV I, Inc.*, 2014 WL
3  1199595, at *6-15 (when applied retroactively to a pre-amendment assignee, the statute severely
4  impairs the value of the contract in a manner which offends the Constitution). Moreover, the statute
5  may be interpreted in a manner which saves it from constitutional infirmity while still accurately
6  reflecting the legislature's intent in enacting the statute, i.e., removing the incentive for banks to sell
7  these loans at discounts to collection agencies rather than engaging in negotiations with the
8  homeowner. *Id.* at *12, 16-19.

9  In sum, the court agrees with Judge Jones' analysis regarding the retroactivity of NRS
10 40.459(1)(c) and his conclusion that its application to a situation where the assignment pre-dates the
11 statute's enactment would violate the Constitution. Accordingly, the court adopts the reasoning from
12 *Eagle* and applies it to the facts of the instant case.

13 Because NRS 40.459(1)(c) does not retroactively apply to this particular transaction, the
14 parties' arguments regarding the amount paid in consideration of the loan and the sufficiency of the
15 evidence in support thereof are moot and need not be resolved.

16     *(C)    Shared loss agreement as an "insurance policy" under NRS 40.459(2)*

17 NRS 40.459(2) limits the amount a creditor can recover in a deficiency judgment by
18 providing that "the 'amount of the indebtedness' does not include any amount received by, or
19 payable to, the judgment creditor or beneficiary of the deed of trust pursuant to an insurance policy
20 to compensate the judgment creditor or beneficiary for any losses incurred with respect to the
21 property or the default on the debt."

22 Defendants claim that the "shared loss agreement" between plaintiff and the FDIC qualifies
23 as an "insurance policy" under the statute, and that any compensation given to plaintiff by the FDIC
24 under the agreement would directly reduce the amount that plaintiff could receive in a deficiency
25 judgment.

26 This court has previously considered this same argument and rejected it. In *Branch Banking*
27 *& Trust Co. v. Frank*, case no. 2:11-cv-1366-JCM-CWH, this court examined, *inter alia*, the

28

James C. Mahan
U.S. District Judge

- 7 -

1  applicability of NRS 40.459(2) to the shared loss agreement between the FDIC and Branch Banking.
2  (*Id.*, doc. # 134, p. 9-10). The defendants in *Frank* made the same argument that the shared loss
3  agreement qualified as an insurance policy under the statute, which therefore required any amount
4  receivable by the plaintiff to be reduced. This court disagreed, finding that the argument was not
5  supported by the plain language of the statute and the legislature's intentions in enacting it.

6  Undeterred, the defendants here reiterate that argument and insist the court erred in its
7  conclusion in *Frank*. For support, defendants rely on the legislative history of NRS 40.459(2), and
8  in particular Nevada Assemblyman Conklin's statements on the issue.

9  However, in an order ruling on a motion for reconsideration in *Frank*, this court revisited the
10  issue and thoroughly considered the very same remarks made by Assemblyman Conklin. (*Id.*, doc.
11  # 150, p. 14-17). In summarizing its findings, this court concluded that:

> [B]ecause there is no chance that the loss-sharing agreement will allow plaintiff to recover more than the amount to which it is entitled under the loan, the provision relating to "insurance agreements" within Nev. Rev. Stat. § 40.459(2) does not apply in this instance. Furthermore, even if the Nevada legislature intended for that provision to apply to terms such as the loss-sharing agreement, its application would be barred under the doctrine of pre-emption, as it would serve as an obstacle to the intent of Congress expressed in the laws governing the FDIC. For these reasons, the amount of indebtedness will not be reduced due to the loss-sharing agreement between plaintiff and the FDIC.

*Id* at p. 17.

Defendants have not presented any new arguments that the court has not previously heard and considered. The court stands by its prior ruling in *Frank*, and again rejects the argument that the shared loss agreement between Branch Banking and the FDIC qualifies as an insurance policy for the purposes of NRS 40.459(2).

### IV.   Conclusion

The court finds that plaintiff has provided sufficient evidence to establish all essential elements of its claim. However, the court recognizes that it may not make a ruling regarding the fair market value at the time of the trustee's sale prior to holding a hearing under NRS 40.457(1). *Am. Gen. Fin. Corp. v. First Commercial Title, Inc.*, 524 P.2d 1270, 1271 (1974). Therefore plaintiff's

**James C. Mahan**
**U.S. District Judge**

- 8 -

motion for summary judgment will be granted except as to the issue of fair market value at the time of sale.

In addition, the court finds that NRS 40.459(1)(c) does not apply retroactively to these facts. As a result, the deficiency amount will be determined as calculated under only NRS 40.459(1)(a) and (b).

Though NRS 40.457(2) allows the court to appoint an appraiser, the court is within its discretion to decline to do so and instead require the parties themselves to submit sufficient evidence on the issue. *See Unruh v. Streight*, 615 P.2d 247, 249 (1980). The court declines to appoint an appraiser at this time.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for summary judgment (doc. # 30) be, and the same hereby is, GRANTED as to all issues except the fair market value of the property at the time of the trustee's sale.

IT IS FURTHER ORDERED that defendants' motion for partial summary judgment (doc. # 39) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the parties shall have thirty (30) days from entry of this order to file opening briefs of not more than ten (10) pages concerning the fair market value of the property at issue at the time of the trustee's sale. The parties shall then have ten (10) days after the filing of opening briefs to file response briefs of not more than five (5) pages. Thereafter, the court will set a fair market valuation hearing pursuant to NRS 40.457(1).

DATED June 2, 2014.

_____
UNITED STATES DISTRICT JUDGE